IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:20-MJ-150 |
| ) | |
| TARIQ BRANCH, ) | **UNDER SEAL** |
| ) | |
| ) | |
| Defendant. ) | |

**AFFIDAVIT IN SUPPORT OF**
**A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Jonathan C. Boller, being first duly sworn, hereby depose and state as follows:

1. I have been a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since April 10, 2016. I am currently assigned to the ATF Washington Field Division's Crime Gun Intelligence Center, where I am tasked with investigating illegal activity in connection with acts of violence committed within the District of Columbia. My assignments include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those found in Title 18 and Title 21 of the United States Code. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18. Since working for ATF, I have successfully completed the ATF SA Basic Training (SABT). Prior to my current ATF assignment, from August 2016 to March 2019, I was assigned to the Washington Field Division's Firearms Enforcement Group in Falls Church, Virginia. During this time, I was tasked with targeted enforcement concerning firearms and narcotics within the

1

Northern Virginia area and assisting state and local agencies with violent crime reduction, pursuant to ATF's overall mission. Prior to joining ATF, I served as a SA with the United States Secret Service (USSS), as a Police Officer, and as a Federal Air Marshal. As a SA with the USSS, I graduated from the Criminal Investigator Training Program and received specialized training including certification in the Basic Investigation of Computer and Electronic Crimes Program (BICEP). While serving as a Police Officer, in addition to my routine patrol duties, I initiated and participated in criminal investigations involving the apprehension of individuals engaged in unlawful narcotics possession and distribution, unlawful firearms possession, and fugitive apprehensions. While serving as a Federal Air Marshal, in addition to my regular flight assignments, I served as a team member for numerous Special Mission Coverage assignments, assisting in investigations against targets in ongoing terrorism investigations.

    2.    As an ATF SA, I have investigated and assisted in the investigation of narcotics and firearms traffickers. I have previously participated in a variety of investigations, which resulted in the arrest and conviction of narcotics and firearms traffickers. During the course of these investigations, I have used several different investigative techniques, including: interviewing informants and cooperating sources; conducting physical surveillance; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen registers, caller identification data, historical location data, social media communication records, as well as other information stored within cellular telephones and social media accounts; conducting court-authorized electronic surveillance; preparing and executing search warrants, which have led to substantial seizures of narcotics, firearms, contraband, and drug related assets from the personal residences of drug traffickers and elsewhere; and, the analysis of financial documents and records. I have utilized the aforementioned instruction and experience in the

performance of my duties by initiating, participating and coordinating numerous criminal investigations involving firearms and narcotics.

3. I submit this affidavit in support of a criminal complaint and arrest warrant charging Tariq Branch ("BRANCH") with making a false statement with respect to the purchase of a firearm on October 30, 2018, in violation of 18 U.S.C. § 924(a)(1)(A).

4. The information contained in this affidavit is based upon my personal observations and investigation, as well as on reports and statements of participating agents, detectives, and officers. All observations I did not personally make were related to me by the individuals who made them, or come from my review of records, documents, and other physical evidence obtained during the course of this investigation. This affidavit contains information necessary to support probable cause, and it is not intended to contain all information known by me or the government.

## PROBABLE CAUSE

5. Through my training and experience, I am aware that federal law prohibits federal firearms licensees ("FFLs") from selling a firearm to a non-licensee purchaser "unless the [FFL] records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a). I am further aware that the law requires FFLs to retain "as a part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms." 27 C.F.R. § 478.124(b). Accordingly, any false statement a purchaser makes on a Form 4473 pertains to information an FFL is required to maintain by law.

6. Your affiant has been investigating the purchase and sale of certain firearms that have been involved in shootings in Richmond, Virginia and Washington, D.C., which has revealed BRANCH's involvement in an illegal scheme to straw purchase firearms that have been illegally sold to individuals in Richmond and Washington, D.C.

A. <u>NIBIN Leads for Firearm Purchased by BRANCH</u>[1]

7. On October 31, 2018, a shooting occurred in Richmond, Virginia, within the Eastern District of Virginia. Cartridge casings from this shooting were recovered by the Richmond Police Department and submitted to ATF for National Integrated Ballistic Information Network (NIBIN) entry and analysis. On November 1, 2018, the Metropolitan Police Department of the District of Columbia ("MPD") recovered cartridge casings in Northwest, Washington, D.C. from a shooting into an occupied dwelling. A cartridge casing from this shooting incident was also submitted to ATF for NIBIN analysis.

8. On March 2, 2019, MPD recovered a Glock, Model 23, .40 caliber semiautomatic pistol bearing serial number THW844 (hereinafter "Gun A") underneath a parked car after they approached a group of suspected gang members on the street, and observed one of the suspects duck down near the car before fleeing from law enforcement. Gun A was later submitted to ATF for a test fire and NIBIN analysis. The ATF National NIBIN Correlation and Training Center (NNCTC) determined that there was a very high likelihood that Gun A fired the shell casings recovered at the scene of the October 31 and November 1, 2018 shootings in Richmond, Virginia and Washington, D.C.

9. A firearm trace revealed that Gun A was purchased by BRANCH on October 30, 2018, from Town Police Supply, an FFL located in Richmond, Virginia, within the Eastern District of Virginia.

10. In order to purchase Gun A, BRANCH was required by law to truthfully fill out ATF Form 4473. On that form, BRANCH responded "yes" to a question certifying that he was

---

[1] The National Integrated Ballistic Information Network (NIBIN) is a national database of digital images of cartridge cases that were found at crime scenes or test-fired from crime guns.

4

the actual buyer of the firearm listed for purchase. That form expressly warned BRANCH that he was "not the actual transferee/buyer" if he was "acquiring the firearm(s) on behalf of another person." On Section 14 of ATF Form 4473, BRANCH certified by signature that his answers on the form were "true, correct, and complete," and that he understood that "making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to [the] transaction, is a crime punishable as a felony under Federal law," and that "the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of law."

      B.      ATF Interview of BRANCH

11.      On May 22, 2019, ATF SAs interviewed BRANCH, who voluntarily consented to speak with law enforcement. BRANCH initially claimed that he sold Gun A on Armslist,[2] before admitting that he purchased Gun A on behalf of a friend. BRANCH further explained that the friend he purchased Gun A for had told BRANCH he knew an easy way for BRANCH to make money buying and selling firearms. BRANCH stated that he purchased Gun A for $329 and gave it to his friend either on the same day he purchased Gun A or the following day. BRANCH further stated that his friend had instructed him to buy a Glock because Glock brand firearms sold best. BRANCH stated that his friend gave him $700 in cash as payment for Gun A.

      C.      BRANCH's Involvement in a Straw Purchasing Scheme with Gang Members

12.      Further investigation identified the friend who purchased Gun A from BRANCH as Co-Conspirator 2 ("CC-2"), who is known to your affiant as a high-ranking member of the Red Lyfe Blood gang in Richmond, Virginia.

---

[2] Armslist is a classified advertisement website for the sale of firearms and related accessories.

13. In addition to BRANCH and CC-2, this straw purchasing scheme involved Co-Conspirator 1 ("CC-1"), also a high-ranking member of the Red Lyfe Blood gang in Richmond, Virginia, and Gregory McClendon, an additional straw purchaser who went to high school with BRANCH and CC-2. On February 7, 2019, the day after McClendon straw purchased a second firearm on behalf of CC-1, BRANCH and McClendon text messaged with each other in order to discuss that CC-2 had been arrested that day for violating the terms of his probation by unlawfully possessing a firearm in Richmond, Virginia.

14. As with BRANCH, CC-2 was involved in directing McClendon's straw purchase of a firearm from Town Police Supply in Richmond, Virginia. Specifically, CC-2 called Town Police Supply on February 1, 2019, the morning McClendon straw purchased the first firearm for CC-1. CC-2 then called CC-1 approximately 90 minutes later. Approximately 20 minutes later CC-2 called MCCLENDON. Approximately an hour and 45 minutes later, MCCLENDON straw purchased Gun B from Town Police Supply and, then, called CC-2 five minutes later. In addition, CC-2 transported the second firearm McClendon straw purchased for CC-1 from Town Police Supply from Richmond, Virginia to Washington, D.C.

15. As part of the scheme, CC-2 worked with CC-1 to transport firearms and arrange for their sale in Washington, D.C with Co-Conspirator 3 ("CC-3"). Analysis of CC-2's social media accounts revealed that CC-2 and CC-3 frequently discussed the purchase and sale of firearms and illegal drugs. In addition, analysis of CC-1's and CC-2's call detail records and historical cell site data revealed that they both frequently made short-duration trips to CC-3's neighborhood in Washington, D.C. and were in frequent contact with CC-3 during those trips. In addition, CC-2 documented some of these trips to Washington, D.C. on social media by posting

pictures of his entry into Washington, D.C. via the I-395 tunnel, which CC-2 captioned in the posted pictures the "money tunnel."

16. Further investigation revealed that Gun A was used during a shootout at a house party on October 31, 2018, the day after BRANCH straw purchased Gun A. Specifically, the shootout occurred at a house party in Richmond at 11:18 p.m. on October 31, 2018 and approximately twenty shots were fired during the shootout. ATF's NIBIN analysis concluded that several of the shell casings recovered from the scene of the shooting were likely fired by Gun A. The day after this shootout, CC-2 messaged a friend on social media, informing the friend that he had been in a shootout at a house party in Richmond, Virginia.

## CONCLUSION

17. Based on the foregoing facts, I submit that probable cause exists to conclude that, on or about October 30, 2018, in Richmond, Virginia, within the Eastern District of Virginia, BRANCH made a false statements on an ATF form 4473 with regard to his purchase of a firearm, in violation of 18 U.S.C. §924(a)(1)(A).

Respectfully submitted,

*Jonathan Boller*
Jonathan C. Boller
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Respectfully submitted and attested to in
accordance with the requirements of Fed. R. Crim.
P. 4.1 via telephone this __19th__ day of May, 2020.

_____
The Honorable John F. Anderson
United States Magistrate Judge